UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CHRISTY JO FAWBUSH, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:16-cv-1338-WTL-MJD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Christy Jo Fawbush requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Fawbush's application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties,[2] now rules as follows.

### I. PROCEDURAL HISTORY

Fawbush filed for DIB and SSI on July 15, 2013, alleging she became disabled on November 30, 2011. Fawbush's application was denied initially on September 23, 2013, and again upon reconsideration. Following the denial upon reconsideration, Fawbush requested and received a hearing in front of an Administrative Law Judge ("ALJ"). That hearing, during which Fawbush was represented by counsel, was held by video conference on June 12, 2014, before

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

[2] The Plaintiff did not file a reply brief, and the time for doing so has expired.

ALJ Lisa B. Martin, who was in Falls Church, Virginia. After the hearing, Fawbush submitted additional evidence that was also reviewed by the ALJ. The ALJ issued her decision on November 26, 2014, denying Fawbush's claim. Fawbush requested review by the Appeals Council, and the Appeals Council denied the request for review on March 29, 2016. Fawbush then filed this timely appeal.

## II.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).[3] At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of

---

[3] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only, with the exception of DIB section cites where they provide information beyond that found in the SSI sections.

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citation omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted).

### III. ALJ MARTIN'S DECISION

ALJ Martin determined at step one that Fawbush had not engaged in substantial gainful activity since November 30, 2011, the alleged disability onset date. Record at 21. At step two, the ALJ concluded that Fawbush had the severe impairments of lumbar and cervical spine disorder, bilateral knee arthritis, fibromyalgia, migraines, sleep apnea, edema, obesity, and affective disorder. R. at 22. At step three, the ALJ determined that Fawbush's impairments did

not meet or medically equal Listings 1.00, 1.02, 1.04, 3.10, 4.00 *et seq.*, 11.00 *et seq.*, 12.02, 12.04, 12.06, 12.07, or 14.09D. R at 22. At step four, the ALJ determined that Fawbush had the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform a full range of light work . . . , except the claimant needs a brief sitting down opportunity hourly for 1-2 minutes in addition to normal work breaks; is limited to four hours of standing/walking, with the remaining time being sitting, in an eight-hour work day; must avoid all climbing of ladders, ropes, or scaffolds; is limited to occasional postural motions otherwise; is limited to occasional overhead reaching tasks; must avoid all exposure to dangerous work hazards (i.e., unprotected heights and exposed machinery); must avoid all exposure to extreme heat, humidity, and cold conditions. Because of pain symptoms and mental distractions preventing detailed decision-making, the claimant is also limited to routine, uninvolved tasks not requiring a fast assembly quota pace.

R. at 24.

The ALJ determined that Fawbush could not perform past relevant work, but would be capable of performing work that exists in significant numbers in the national economy. R. at 30-31. Accordingly, the ALJ concluded that Fawbush was not disabled as defined by the Act.

## IV. **EVIDENCE OF RECORD**

The ALJ's decision in combination with the parties' briefs aptly set forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V. **DISCUSSION**

In her brief in support of her Complaint, Fawbush argues that "the ALJ failed to properly evaluate fibromyalgia under Step 3 as required by SSR 12-2p, or that at the least, the ALJ failed to adequately set forth such an evaluation in her decision in a manner that builds an accurate and logical bridge from the evidence to his [sic] conclusion." Dkt. No. 18 at 6-7. She further contends that "the ALJ committed reversible error when she failed to provide for any RFC

4

limitations to address Ms. Fawbush's migraine headaches after finding the impairment severe at Step 2." *Id.* at 9.

### A. Medical Equivalency

Fawbush argues that the ALJ erred in analyzing whether her fibromyalgia medically equaled a listing. Dkt. No. 18 at 4-9. As Fawbush acknowledges, the ALJ noted that fibromyalgia is not listed as a specific impairment. *See* Dkt. No. 18 at 7 (citing R. at 22). The ALJ considered whether Fawbush's impairments medically equaled 14.09D, as well as other listings. R. at 22. She determined that "[t]he evidence does not support a finding that the claimant meets or medically equals any of these listings." R. at 22. As Fawbush correctly indicates, the ALJ did not cite to specific record evidence in the section of her decision where she concluded that Fawbush's fibromyalgia impairments did not medically equal a listing. Dkt. No. 18 at 7 (citing R. at 22). The ALJ did, however, discuss the record evidence in detail, including evidence of fibromyalgia and arthritis, in the section she devoted to her RFC finding. *See* R. at 26-28. In addition, when considering listings 1.02 and 1.04 regarding musculoskeletal system impairments, she explained why Fawbush did not meet the listings. *See* R. at 22 ("The claimant does not meet listing 1.02 because the claimant has only been prescribed a cane, indicating that she can ambulate effectively within the meaning of 1.00B2b. The claimant has also not been diagnosed with nerve root compression or spinal arachnoiditis so does not meet listing 1.04.").

Fawbush cites to *Lindley v. Colvin*, No. 2:12-cv-190-WTL-WGH, 2013 WL 5328238 (S.D. Ind. Sept. 20, 2013), arguing that "the holding in *Lindley* supports Ms. Fawbush's contention that the ALJ's Step 3 analysis here is insufficient." Dkt. No. 18 at 8. The Court notes that district court cases are not precedential. That said, *Lindley* is easily distinguishable from this

case. In *Lindley*, the ALJ did not address fibromyalgia at all in his discussion of whether the claimant's impairments met or equaled a listing. In addition, the ALJ's decision in *Lindley* did not designate any specific listing subparts, finding only that the claimant did not meet or equal listings 1.00 and 12.00. *See Lindley*, No. 2:12-cv-190-WTL-WGH, 2013 WL 5328238, at *4. The ALJ cited only the two Disability Determination forms completed by state agency doctors and an opinion of a medical expert testifying at the hearing. *Id.* at *5.

Unlike the ALJ in *Lindley*, the ALJ in this case considered several specific listings, including specific listings and subparts such as 1.02, 1.04, and 14.09D that are associated with fibromyalgia, and she discussed in detail, albeit in the RFC section of her decision, the medical evidence regarding Fawbush's fibromyalgia diagnosis. *See* R. 26-28. At several points, the ALJ also explicitly discussed the record evidence that Fawbush says "could have provided a basis for a full Step 3 analysis." *See, e.g.*, R. at 26 (discussing records from Fawbush's treating rheumatologist to which Fawbush referred in Dkt. No. 18 at 9).[4] For example, she discussed Fawbush's diagnoses of fibromyalgia and bilateral osteoarthritis and described the tenderness, cartilage wear, and bursitis in Fawbush's knees. *Id.* Referring to Fawbush's treating physician's records, the ALJ documented the repeated reports that Fawbush's fibromyalgia was under "moderate control" with her medications or was "stable." *See* R. at 26 (citing R. at 343); R. at 27 (citing R. at 337); R. at 28 (citing R. at 400), referring to fibromyalgia being under "moderate control," and R. at 26 (citing R. at 315, 324, & 346); R. at 28 (citing R. at 400), referring to fibromyalgia as "stable."

---

[4] Fawbush also refers to R. at 414-458 as records from Fawbush's treating rheumatologist, but these records are from Monroe Primary Care/Columbus Regional Hospital and do not appear to contain any records from a treating rheumatologist.

6

Also in the ALJ's RFC section of her opinion, she made clear that she gave "great weight" to the opinions of Drs. Sands and Corcoran, two of the State agency consultative doctors. R. at 29. Both doctors determined that Fawbush's fibromyalgia was severe. *See* R. at 65 and 87. Although the doctors did not name every listing the ALJ considered, they were not required to—they concluded that Fawbush was not disabled. As a result of those determinations, it was "conclusively establish[ed]" that they had considered the question of medical equivalence and determined that Fawbush did not meet or equal any listing. *See Scheck*, 357 F.3d at 700 (State agency forms 'conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely on the opinion of these medical experts. So, substantial evidence supports a finding that [plaintiff] did not meet or equal a listing.") (internal citations and quotations omitted); Social Security Ruling ("SSR") 17–2p.

Combined with the ALJ's discussion of the record evidence regarding fibromyalgia, this is enough to establish that the ALJ adequately set forth such an evaluation in her decision and built an accurate and logical bridge from the evidence to her conclusion. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("The discussion provides the necessary detail to review the AJL's step 3 determination in a meaningful way."). Consequently, the ALJ did not fail to properly evaluate fibromyalgia under Step 3. *See id.* ("The ALJ's discussion at step 3, when considered in light of his discussion of Curvin's RFC, sufficiently met his duty to articulate.") (internal quotation omitted).

Moreover, as the claimant, Fawbush "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria

specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."). Fawbush has not suggested which listing her impairments medically equal, nor has she attempted to point to evidence in the record that suggests that she satisfies any listing. As a result, Fawbush is not entitled to remand on this issue.

### B. RFC Limitations

Fawbush also contends that the ALJ "failed to provide for any RFC limitations to address Ms. Fawbush's migraine headaches." Dkt. No. 18 at 9. Fawbush acknowledges that the ALJ "discredited [the treating doctor's] recommended limitations regarding absences," but she also speculates that the ALJ "may not have recognized that this limitation might have its basis in Ms. Fawbush's migraines." Dkt. No. 18 at 13. There is merit to Fawbush's argument. The ALJ rationalizes her choice of RFC limitations, in part, as follows:

> Based on all of the objective medical evidence as well as the statements by the claimant and third parties, the undersigned finds the claimant limited to light work due to her spine impairment, fibromyalgia, and arthritis. The claimant's additional postural restrictions and sit/standing restrictions are also due to the pain caused by these three impairments. Because the claimant has reported that weather changes from warm to cold make[] pain levels worse, the claimant should avoid exposure to extreme temperatures. The claimant moves slowly because of her pain and should therefore not be around unprotected work hazards. In addition to exertional limitations, the claimant's mood disorder, sleep apnea, and fibromyalgia all limit the claimant's ability to concentrate. Accordingly, the claimant is limited to routine, uninvolved tasks not requiring a fast assembly quota pace. The decisional residual functional capacity best reflects the claimant's maximum residual functional capacity based upon the totality of the medical evidence.

R. at 28-29. This explanation does not explicitly introduce RFC limitations related to Fawbush's severe impairments of obesity, edema, or migraines or explain why limitations might not have

8

been necessary for these impairments. Impairments that the ALJ deems "severe" by definition "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Consequently, they must be considered when assessing the RFC. *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").

In her decision, the ALJ explained that "the extra weight caused by obesity most likely exacerbated the claimant's chronic pain in her back and knees." R. at 27. Obesity was, therefore, addressed in the RFC limitations the ALJ attributes to Fawbush's spine impairment, fibromyalgia, and arthritis.

Fawbush's edema and migraines, however, were not addressed by the RFC limitations. The ALJ acknowledged that Fawbush's treating physician noted that her edema was moderately controlled by medication in August 2012, January 2013, and April 2014; that in April 2012, her rheumatologist noted no edema; and her consultative examination in September 2013 did not find any recurrent edema. R. at 27-28. The ALJ discounted Fawbush's treating physician's June 2014 recommendation that Fawbush's legs be elevated 50% of the time during an eight-hour workday because that recommendation was inconsistent with the doctor's own assessment that her edema is moderately controlled by medication and by the other physicians' opinions. R. at 30. The ALJ also noted that Fawbush's treating physician described her migraines as under "good control" in August 2012 and under "moderate control" in June and October 2013.[5] R. at 27. She further reasoned that "there [were] no recent treatment notes from [the treating

---

[5] Additionally, citing R. at 225, the ALJ noted that Fawbush reported not going to the emergency room for headaches in the last 12 months, but that document does not contain such information.

physician] indicating that the claimant's physical or mental impairments worsened between April 2014 and June 2014 when his assessment was signed." *Id.*

Despite including the above reasoning in her opinion, the ALJ failed to explain why the RFC contains no limitations associated with Fawbush's migraines.[6] As a result, it is impossible to tell whether the ALJ considered this impairment when assessing Fawbush's RFC. It could be that the ALJ found Fawbush's migraines to be sufficiently controlled by medication, so they required no restrictions. Or, as Fawbush speculates, perhaps the ALJ did not consider Fawbush's migraines when she gave the treating physician's opinion regarding absences little weight because she may not have recognized that the limitation pertained to migraines. It is also possible that the ALJ somehow forgot to consider Fawbush's migraines altogether.

Because the ALJ does not explain, the Court does not know whether the ALJ considered Fawbush's migraines in assessing Fawbush's RFC. Just as the ALJ must include a discussion describing how the evidence and specific medical facts support each conclusion reached in the RFC, *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005), she must also consider all of Fawbush's medically determinable impairments in assessing her RFC, 20 C.F.R. § 416.945(a)(2). The failure to clearly articulate whether she considered Fawbush's migraines in assessing the RFC is a basis for remand.

---

[6] Fawbush does not allege that the ALJ failed to account for limitations associated with edema in the RFC determination. As a result, Fawbush has waived this argument. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quotation omitted). To the extent that Fawbush may have suggested in her brief that the ALJ erred by not considering her subjective symptoms, she has not developed this argument. Thus, it is also waived. Fawbush also mentions that the ALJ gave her treating physician's opinion little weight. *See* Dkt. No. 18 at 13. To the extent that Fawbush intended this mention to be an argument that the ALJ improperly discounted her treating physician's opinion, this argument is undeveloped and therefore waived.

## VI. CONCLUSION

As set forth above, the ALJ erred in her failure to articulate whether she considered Fawbush's migraines in assessing her RFC. Accordingly, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/29/17

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification